NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

J.A.D.,                                              )
                                                     )
             Appellant/Cross-Appellee,               )
                                                     )
v.                                                   )          Case No. 2D17-2709
                                                     )
K.M.A.,                                              )
                                                     )
             Appellee/Cross-Appellant.               )
_____)

Opinion filed February 1, 2019.

Appeal from the Circuit Court for Polk
County; Ellen S. Masters, Judge.

Michael M. Brownlee of Brownlee Law
Firm, P.A., Orlando, for Appellant/Cross-
Appellee.

Jean Marie Henne, of Jean M. Henne,
P.A., Winter Haven, for Appellee/Cross-
Appellant.


BADALAMENTI, Judge.

        J.A.D. (the Father) appeals and K.M.A. (the Mother) cross-appeals a final

judgment of paternity establishing a timesharing plan and imposing a child support

obligation on the Father.  After the benefit of oral argument and a careful review of the

record, we reverse the child support award, holding that the trial court erred in

calculating the Father's child support obligation and by failing to attach the parties' child support guidelines worksheets to the final judgment.

The Father and the Mother were a couple from 2007 to 2013. In 2008, the Mother conceived a child, J.D.D. In 2016, the Father filed a petition to determine paternity of J.D.D. in which he admitted to paternity and sought to establish his child support obligation and a timesharing plan. The Mother filed an answer to the petition and a counterpetition.

At the final hearing on both petitions, the parties heavily disputed the amount of the Father's income. The Father testified that he is employed as the CEO of Phoenix Rising Unlimited, a company owned by his mother. The company operates an entertainment center consisting of a bowling alley, a bar, and a go-kart racing track. The trial court heard testimony from witnesses that the Father received in kind benefits from the company, such as the use of a business vehicle for personal purposes. The bowling alley's general manager testified that she observed the Father remove cash from the company's safe on three to four occasions over a two-year period. She estimated that the amount he removed each time was anywhere from $1000 to $2000. The manager, whom the trial court found to be credible, also testified that she observed the Father sign a company check written out to himself in the amount of $2000. What's more, the manager testified that the Father bragged about using the company's money for personal purposes.

The Mother also offered into evidence a report prepared by the parties' agreed-upon accountant, which the trial court found "demonstrated that some company withdrawals could be for the personal benefit of the Father or could also be for business

expenses."  According to that report, approximately $126,130 of the company's cash withdrawals were not supported by any "backup documentation."[1]

In the final judgment of paternity, the trial court ordered the Father to pay the Mother $1135 per month as his child support obligation.  The trial court found that the Mother's undisputed monthly gross income is $2080 and that the Father's monthly gross income is $11,719.04.  In determining the Father's monthly income, the trial court relied in part on the Father's sworn financial affidavit, which reflected that he earned a monthly gross income of $8333.34 in 2015 as the CEO of his mother's company.  The trial court then added a monthly gross income of $3385.70 to that reported gross income to compensate for undocumented cash withdrawals from the Father's employer that "were not demonstrated to be company expenses."[2]

On appeal, the Father argues that the trial court erred in its determination of child support by (1) relying on and calculating the parties' gross annual incomes and not the parties' net incomes, (2) failing to include a child support guidelines worksheet in the final judgment, and (3) adding $40,628.46 to his income without making specific factual findings to support that addition.  We will address each argument in turn.

---

[1]Although the trial court admitted the accountant's report into evidence, the accountant did not testify at the hearing.

[2]The final judgment references that the trial court "imputed" an additional $3385.70 to the Father's reported monthly income.  It is clear from the record that the trial court was not referring to imputation of income due to the Father's voluntary unemployment or underemployment pursuant to section 61.30(2)(b), Florida Statutes (2016), but instead was referring to in kind contributions received from his employer. See § 61.30(2)(a)(13) (defining gross income to include "[r]eimbursed expenses or in kind payments to the extent that they reduce living expenses").

Section 61.30, Florida Statutes (2016), establishes a guidelines schedule that trial courts must apply in making an award of child support. The child support guideline amount presumptively establishes the amount the trial court shall award as child support. § 61.30(1)(a). The trial court has discretion to deviate from a presumptive child support award by more than five percent "only upon a written finding explaining why ordering payment of such guideline amount would be unjust or inappropriate." Id. In determining the child support guideline amount, the trial court must follow the statutory formula set forth by section 61.30. The statute instructs that the trial court must first determine the net monthly income of each parent by subtracting allowable deductions from each parent's gross monthly income. § 61.30(2)-(4). The net income for each parent is then added together for a combined net income. § 61.30(5). The trial court must then apply the guidelines schedule to the combined net income to determine the presumptive amount of child support to award. § 61.30(6).

The trial court erred by failing to make specific findings concerning each parent's net monthly income and relying only on each parent's gross monthly income. "In conformance with section 61.30, the case law is 'well-settled that a trial court errs by failing to make findings of fact regarding the parties' incomes when determining child support.' " M.M. v. J.H., 251 So. 3d 970, 972 (Fla. 2d DCA 2018) (quoting Wilcox v. Munoz, 35 So. 3d 136, 139 (Fla. 2d DCA 2010)). Because the guidelines are based on the parents' combined net income and there is an absence of findings as to same in the appellate record, this court cannot conduct a meaningful appellate review of the child support award. See § 61.30(6) (mandating that the "guidelines schedule shall be applied to the combined net income to determine the minimum child support need"); see

also M.M., 251 So. 3d at 972; Thilem v. Thilem, 662 So. 2d 1314, 1316 (Fla. 3d DCA 1995) ("[T]he trial court erred in failing to distinguish gross from net income, which is crucial to properly applying the guidelines."). Stated another way, we are compelled to reverse because the absence of findings regarding the parties' net incomes precludes a determination as to whether the award was within the guidelines established in section 61.30 or whether a departure from the guidelines was justified. See M.M., 251 So. 3d at 972.

Additionally, the trial court did not include in the final judgment a child support guidelines worksheet. This, too, was error. See Dep't of Revenue ex rel. R.S.M. v. B.J.M., 127 So. 3d 859, 861 (Fla. 2d DCA 2013). The only child support guidelines worksheet that appears in the record is one filed by the Mother, which shows a combined net monthly income higher than the amount the trial court must have arrived at in order to award a monthly support obligation in the amount of $1135. See id. All in all, the final judgment fails to show how the trial court arrived at that monthly support obligation.

Lastly, we agree that competent substantial evidence did not support the trial court's addition of $40,628.46 to the gross annual income figure the Father included in his sworn financial affidavit. The Father reported that he earned a gross income of $100,000 in 2015. Concluding that "monies paid to or on behalf of [the Father] that were not demonstrated to be company expenses should be included in the Father's income for the child support calculation," the trial court found that $40,628.46 should be added to the $100,000 figure the Father reported as his gross annual income. To support the additional $40,628.46, the trial court generally referenced the testimony of

the bowling alley's general manager. Her testimony established that the Father took $1000 to $2000 from the company safe on three to four occasions and boasted about using the company's money for personal expenses. The trial court also generally referenced the accountant's final report. But the accountant's final report reveals an aggregate of $126,130 of cash withdrawals with "no backup documentation" provided by the company. Notwithstanding the testimony and documents the trial court referenced in the final judgment, it is unclear how the trial court arrived at the $40,628.46 figure. As the Father asserts, it may be that the Father's income should not have been inflated by $40,628.46. Conversely, it may well be that the Father's income should have been increased by a much greater amount. This is something for the trial court to decide, and it must do so by making specific factual findings supporting the income it found. See M.M., 251 So. 3d at 972.

We therefore reverse the child support award and remand to the trial court with instructions to support its award by making specific findings concerning the specific numbers that it used to calculate the amount of child support. See Sumlar v. Sumlar, 827 So. 2d 1079, 1083 (Fla. 1st DCA 2002) (concluding that the absence of findings concerning "the specific numbers that were used to calculate the amount of child support" did not permit meaningful review of the trial court's ruling on the child support amount and remanding with instructions for the trial court "to make sufficient findings" to support the award). We further note that the trial court is required to include child

support guidelines worksheets from both parties in its amended final judgment.  See

Dep't of Revenue ex rel. R.S.M, 127 So. 3d at 861.[3]

Affirmed in part, reversed in part, and remanded with instructions.


SLEET and LUCAS, JJ., Concur.

---

[3]We have carefully considered all the remaining arguments in the Father's appeal and the Mother's cross-appeal and affirm the trial court's rulings as to those issues without comment.